IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| STATE OF WASHINGTON, | ) | No. 31935-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DAVID NORMAN POLK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury found David Polk guilty of four counts of second degree dealing in depictions of a minor engaged in sexually explicit conduct and four counts of second degree possession of depictions of a minor engaged in sexually explicit conduct. He raises four issues on appeal. First, he contends that his four convictions for second degree possession violate the prohibition against double jeopardy because the offense of second degree possession of depictions is one unit of prosecution. Second, he contends that the State failed to present sufficient evidence to prove three of the counts of second degree dealing in depictions. Third, he contends that the possession of depictions count comprises the same criminal conduct as the dealing in depictions counts. Last, he challenges the imposition of a no contact order with R.E.R. We hold that double jeopardy

considerations require dismissal of three of the four possession convictions, and that there is no authority to support the imposition of the no contact order with R.E.R. We therefore reverse three of the convictions, one no contact order, and remand for resentencing.

## FACTS

Mr. Polk, using the pseudonym "D-Man," contacted Brian Bennett on Facebook. Report of Proceedings (RP) at 31-32. Mr. Polk and Mr. Bennett discovered that they were both friends with D.R.E. Mr. Polk sent computer files containing three nude photographs of D.R.E. to Mr. Bennett. Mr. Polk said that he had more.

Mr. Bennett figured out that D-Man's identity was Mr. Polk. Mr. Bennett contacted Detective Mike Boettcher about the photographs and allowed a search of his computer. Mr. Bennett also contacted D.R.E. to inform her that someone calling himself D-Man was circulating the nude photographs.

D.R.E. remembered Mr. Polk taking the photographs when she was 16 years old and living in Walla Walla. Mr. Polk represented himself to be a professional photographer and told D.R.E. that he wanted to take some fully nude photographs of her for submission to Playboy. On more than one occasion, Mr. Polk took nude and partially nude pictures of D.R.E. Mr. Polk told D.R.E. that she would need to wait until she was

2

18 years old to sign a contract for Playboy. D.R.E. moved away from Walla Walla shortly before her 18th birthday.

D.R.E. contacted Detective Roger Maidment about the photographs. A search warrant was obtained for Mr. Polk's home. Police seized seven computers located in various locations throughout the house. The computers were linked together, forming a global access network. One computer was logged onto D-Man's Facebook account and two other computers showed past access to D-Man's Facebook account. Police also found hundreds of slides, some of which were boxed or bagged together and labeled with a name, a slide digitizer to transfer images to computer files, and hundreds of loose photographs.

Detective Boettcher reviewed 7 to 8 terabytes of data for images of underage, nude females and males. In the images, he identified six underage females, four of whom testified at trial. He also found images of around a dozen more females who appeared to be underage but could not be identified.

According to Detective Boettcher, the digitized image files were copied onto many computer hard drives over the years. The dates on the computer files represented copy dates, not the date that the photograph was taken. Additionally, Detective Boettcher

determined that the dates stamped on the hard-copy slides did not represent the date the photograph was taken but were externally stamped later.

One of the four victims identified in the images was D.R.E. Detective Boettcher located several digitized images of D.R.E., four of which were pornographic. A total of 170 copies of these four images were found on the computers in Mr. Polk's home. One of the digitized images matched a slide that Mr. Polk gave D.R.E. 20 years earlier. The date on the digitized version of the slide image was November 21, 2011.

Detective Boettcher also located images of S.L.M. in the search, recovering 87 hard-copy slides and 323 digitized images on four different computer hard drives. S.L.M. moved to Walla Walla when she was 15 years old and met Mr. Polk shortly after she turned 16 years old. She wanted a portfolio to become a model and posed for Mr. Polk four times. She remembers being 16 years old at the last shoot. While S.L.M. never got a copy of the photographs, she did see them during a slide show that Mr. Polk presented to S.L.M.'s husband after S.L.M. turned 18. The hard-copy slides of S.L.M. found in Mr. Polk's home were embossed with a date that occurred before she turned 18.

Images of T.J.H. were also found. Mr. Polk photographed T.J.H. and a friend without clothes on when T.J.H. was 16 years old. Later, but still at age 16, T.J.H. returned to Mr. Polk and had nude photographs taken to give to her boyfriend. When Mr.

Polk gave T.J.H. the photographs, he told her that he was providing all photographs and negatives. T.J.H. eventually destroyed the nude photographs. However, police found five hard-copy slides of T.J.H. in Mr. Polk's home. One slide was embossed with the date December 1990. No digitized images of these slides were found on Mr. Polk's computer.

The next victim, C.C.M., met Mr. Polk when she was 13 or 14 years old. He told her that she was "modeling material" and took nude photographs to create a modeling portfolio. RP at 107. C.C.M. remembered that the photographs were taken before she turned 18 years old because she left for the Job Corps at 16, was pregnant at 17, and gave birth to her first child days after her 18th birthday. C.C.M. said that Mr. Polk gave her some of the photographs and, when her father asked for the rest, Mr. Polk said that he burned them. Still, police uncovered 49 slides of C.C.M. from Mr. Polk's home. Detective Boettcher also found digital copies of some of C:C.M.'s slides that were scanned into a recovered computer on December 9, 2011.

The State charged Mr. Polk with four counts of second degree dealing in depictions of a minor engaged in sexually explicit conduct and four counts of possession of depictions of a minor engaged in sexually explicit conduct. Prior to trial, Mr. Polk moved to dismiss all but one of the possession counts based on the same unit of

5

prosecution. The State acknowledged that the unit of prosecution for possession was per incident and not per image, but argued that the photographs of each different victim constituted a different incident of possession. After hearing the argument, the trial court denied Mr. Polk's motion.

The State presented testimony of D.R.E., S.L.M., T.J.H., C.C.M., Detective Boettcher, and others. The State intended to present testimony of a fifth female, R.E.R., who had contact with Mr. Polk when she was underage. R.E.R. made statements to police prior to trial regarding her interactions with Mr. Polk when she was underage. R.E.R. was on a witness list to testify at trial. However, no photographs were found of R.E.R. in Mr. Polk's home. Mr. Polk moved to exclude R.E.R.'s testimony. The day before trial, the State informed the court that R.E.R. would not be testifying. The State amended the information to eliminate one count of dealing in depictions.

Regarding the four counts for dealing in depictions, the State presented a specific date of the alleged crime in the jury instructions. During closing arguments, the State also identified the victim associated with each count. Count 1 involved the transfer of the pictures of D.R.E. to Mr. Bennett on or about December 15, 2011. Count 2 involved dealing in the images of D.R.E. on or about November 21, 2011. Count 3 involved dealing in the images of S.L.M. on or about November 17, 2011. Count 4 involved

dealing in the images of C.C.M. on or about December 9, 2011. The four counts for possession of depictions, counts 5 through 8, were identically described in the information with the same violation date of June 15, 2012.

A jury found Mr. Polk guilty of all eight charges. At sentencing, Mr. Polk renewed his motion to dismiss three of the possession charges based on the same unit of prosecution. He also argued that the convictions constituted the same criminal conduct and challenged the calculation of his offender score. The sentencing court declined to revisit the issues.

The court calculated Mr. Polk's offender score to be 21 for the eight counts. Mr. Polk had no prior criminal history. Mr. Polk objected to the score. The standard range sentence for each dealing in depictions count was 72 to 96 months, while the standard range for each possession count was 63 to 84 months. RCW 9.94A.510; RCW 9.94A.515. Despite these ranges, the maximum sentence Mr. Polk could receive for the class C felonies was 60 months. Therefore, the court imposed an exceptional sentence under RCW 9.94A.535(2)(c) by running the concurrent sentences of 60 months on counts 1 through 4 consecutive to the concurrent sentences of 60 months on counts 5 through 8, for a total sentence of 120 months.

Over Mr. Polk's objections, the court imposed a no contact order between Mr. Polk and R.E.R. R.E.R. was not an alleged victim in the case nor did she testify at trial.

Mr. Polk appeals. He raises four issues. First, he challenges the four convictions for second degree possession on double jeopardy grounds. Second, he challenges the sufficiency of the evidence in his second degree dealing in depictions convictions for counts 2 through 4. Third, for offender score calculation purposes, he contends that the possession of depictions counts comprise the same criminal conduct as the dealing in depictions counts. Fourth, he challenges the imposition of a no contact order with R.E.R.

## ANALYSIS

A.    *Whether Mr. Polk's possession of multiple photographs of child pornography count as a single unit of prosecution*

Mr. Polk contends that the entry of four convictions for second degree possession of depictions of a minor engaged in sexually explicit conduct violated his constitutional right against double jeopardy because the simultaneous possession of multiple photographs found in the same location constitutes a single unit of prosecution for which he is subject to a single conviction under RCW 9.68A.070.

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect against multiple punishments for the same offense. *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). When a defendant is

8

convicted of violating one statute multiple times, the proper inquiry is what unit of prosecution has the legislature intended as the punishable act under the specific criminal statute. *State v. McReynolds*, 117 Wn. App. 309, 334, 71 P.3d 663 (2003) (quoting *Adel*, 136 Wn.2d at 634-35). The legislature has the power, limited by the Eighth Amendment, to define criminal conduct and set out the appropriate punishment for that conduct. *Bell v. United States*, 349 U.S. 81, 82-83, 75 S. Ct. 620, 99 L. Ed. 905 (1955). When the legislature defines the scope for a criminal act, referred to as the unit of prosecution, double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime. *See id.* at 83-84.

The first step in determining the proper unit of prosecution is to examine the language of the statute. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005). Questions of statutory construction are reviewed de novo. *State v. Fisher*, 139 Wn. App. 578, 583, 161 P.3d 1054 (2007). The court first looks to the statute's plain meaning to determine legislative intent. *Ose*, 156 Wn.2d at 144. "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Elmore*, 143 Wn. App. 185, 188, 177 P.3d 172 (2008). Statutes are construed as a whole to harmonize and give effect to all provisions when possible. *State v. Young*, 125 Wn.2d

9

688, 696, 888 P.2d 142 (1995). "A statute is ambiguous if it can be reasonably interpreted in more than one way." *State v. Mullins*, 128 Wn. App. 633, 642, 116 P.3d 441 (2005). "If the language of a penal statute is ambiguous, the courts apply the rule of lenity and resolve the issue in a defendant's favor." *State v. Knutson*, 64 Wn. App. 76, 80, 823 P.2d 513 (1991).

RCW 9.68A.070 prohibits the possession of child pornography. The former version of RCW 9.68A.070 was simplistic, providing that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class B felony." Former RCW 9.68A.070 (2006).

In 2009, the defendant in *State v. Sutherby*, 165 Wn.2d 870, 878, 204 P.3d 916 (2009) challenged the statute, contending that the unit of prosecution under the statute is one unit per possession, not per image or per minor. Mr. Sutherby was sentenced to seven counts of possession of depictions of a minor engaged in sexually explicit conduct after investigators found images of at least seven different minors on Mr. Sutherby's two computers. *Id.* at 876. The court recognized that possession of a "visual or printed matter" constituted "any photograph or other material" under former RCW 9.68A.011(2) (2002), and that "any" was an indefinite term that could mean (1) a single photograph, (2) one, some, or all photographs regardless of quantity, or (3) one or more photographs

or other material. *Id.* at 879-80. Because the intent of the legislature was not clear, the court applied the rule of lenity and prior construction of the term "any" in other contexts and determined that the proper unit of prosecution under former RCW 9.68A.070[1] was "one count per possession of child pornography, without regard to the number of images comprising such possession or the number of minors depicted in the images possessed." *Sutherby*, 165 Wn.2d at 882.

In response to *Sutherby*, the legislature clarified the unit of prosecution for possession and dealing in depictions of a minor engaged in sexually explicit conduct. LAWS OF 2010, ch. 227, § 6. The legislature stated its intent by amending former RCW 9.68A.001 (2007) to read,

> The legislature further finds that due to the changing nature of technology, offenders are now able to access child pornography in different ways and in increasing quantities. By amending current statutes governing depictions of a minor engaged in sexually explicit conduct, it is the intent of the legislature to ensure that intentional viewing of and dealing in child pornography over the internet is subject to a criminal penalty without limiting the scope of existing prohibitions on the possession of or dealing in child pornography, including the possession of electronic depictions of a minor engaged in sexually explicit conduct. It is also the intent of the

---

[1] *Sutherby* addressed former RCW 9.68A.070 (1990), which provided: "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." *Sutherby*, 165 Wn.2d at 879. In 2006, the legislature changed the offense in RCW 9.68A.070 from a class C felony to a class B felony. LAWS OF 2006, ch. 139, § 3.

11

legislature to clarify, in response to *State v. Sutherby*, 204 P.3d 916 (2009), the unit of prosecution for the statutes governing possession of and dealing in depictions of a minor engaged in sexually explicit conduct. It is the intent of the legislature that the first degree offenses under RCW 9.68A.050, 9.68A.060, and 9.68A.070 have a per depiction or image unit of prosecution, while the second degree offenses under RCW 9.68A.050, 9.68A.060, and 9.68A.070 have a per incident unit of prosecution as established in *State v. Sutherby*, 204 P.3d 916 (2009). Furthermore, it is the intent of the legislature to set a different unit of prosecution for the new offense of viewing of depictions of a minor engaged in sexually explicit conduct such that each separate session of intentionally viewing over the internet of visual depictions or images of a minor engaged in sexually explicit conduct constitutes a separate offense.

LAWS OF 2010, ch. 227, § 1.

Correspondingly, the legislature amended RCW 9.68A.070 by dividing the offense into two degrees and defining a unit of prosecution for each degree. LAWS OF 2010, ch. 227, § 6. To commit possession of depictions of a minor engaged in sexually explicit conduct in the first degree, a person must knowingly possess a visual or printed matter depicting a minor engaged in sexually explicit conduct as defined by RCW 9.68A.011(4)(a) through (e). RCW 9.68A.070(1)(a). For the purposes of determining the unit of prosecution for each first degree offense in the aforementioned section, each depiction or image constitutes a separate offense.

For the crime of second degree possession of depictions of a minor engaged in sexually explicit conduct, a person commits the offense when he or she knowingly

12

possesses any visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g). RCW 9.68A.070(2)(a). "For the purposes of determining the unit of prosecution under this subsection, each incident of possession of one or more depictions or images of visual or printed matter constitutes a separate offense." RCW 9.68A.070(2)(c).

We agree with Mr. Polk that his second degree possession of child pornography is one unit of prosecution. In accordance with former RCW 9.68A.001 (2010), the unit of prosecution for second degree possession under RCW 9.68A.070(2)(c) is established in *Sutherby*. Each incident of possession or depictions in the second degree is one unit of prosecution, even if possession includes more than one depiction or image consistent with RCW 9.68A.011(4)(f) or (g).

If the legislature intended for each incident of second degree possession to mean each photograph or a group of photographs of the same victim, it could have done so. Instead, the legislature directed the harsher unit of prosecution standard for first degree possession and intended the unit of prosecution for second degree possession to be consistent with *Sutherby*. Thus, the unit of prosecution for second degree possession is "one count per possession of child pornography, without regard to the number of images

comprising such possession or the number of minors depicted in the images possessed."
*Sutherby*, 165 Wn.2d at 882.

Still, even when the legislature has expressed its view on the unit of prosecution, we must perform a factual analysis to determine whether more than one "unit of prosecution" is present in a particular case. *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007). In Mr. Polk's circumstance, his simultaneous possession of multiple depictions of minors engaged in sexually explicit conduct constituted a single unit of prosecution. The depictions were discovered at the same time and at the same location. The images found in Mr. Polk's home were the result of a single law enforcement search and investigation into his prohibited possession of these images. Like in *Sutherby*, Mr. Polk's possession of multiple depictions of different minors on multiple computers does not automatically result in multiple units of prosecution.

Mr. Polk's four convictions for second degree possession of depictions of a minor engaged in sexually explicit conduct violated his constitutional right against double jeopardy. Dismissal of three of the four counts of possession is therefore required.

B.      *Whether Mr. Polk's convictions for second degree dealing in depictions of minors engaged in sexually explicit conduct in counts 2, 3, and 4 are supported by substantial evidence*

Mr. Polk challenges the sufficiency of the evidence for three of his convictions of second degree dealing in depictions. Mr. Polk contends that the evidence was insufficient to show that he was the person who duplicated the images at the place and time alleged by the State for counts 2, 3, and 4.

In every criminal prosecution, due process requires that the State prove, beyond a reasonable doubt, every fact necessary to constitute the charged crime. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

A person commits the crime of dealing in the depictions of a minor engaged in sexually explicit conduct in the second degree when he or she knowingly develops,

15

duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g). RCW 9.68A.050(2)(a)(i). The State presented sufficient evidence for a jury to conclude that Mr. Polk was the person who scanned and duplicated the photographs onto the computers. Witnesses testified that Mr. Polk was the person who took the pictures. Mr. Polk's wife testified that the photography was Mr. Polk's and no one else's work. Testimony established that Mr. Polk was the person who provided some of the women with copies of their pictures. There was no evidence to suggest that Mr. Polk's wife or daughter assisted in duplicating any of Mr. Polk's photographs. As far as computer access, evidence showed that Mr. Polk logged onto more than one computer on the network in his home and was on the computers where the digitized files were found. The jury could infer that Mr. Polk was the person who copied or digitized the photographs onto the computers in his home.

Sufficient evidence supports the date for each challenged count. First, count 2 deals with duplication of images of D.R.E. on November 21, 2011. This date is supported by the testimony of Detective Boettcher who stated that a digitized image of D.R.E. was copied from one computer folder and placed in a new computer folder on November 21,

2011. Detective Boettcher gathered this file creation date from the computer drive where the image was found.

Second, count 3 alleged dealing in depictions on or about November 17, 2011, and the State alleged in closing arguments that images were of S.L.M. Detective Boettcher testified that the computer storing an image of S.L.M. recorded that the image was originally scanned on December 9, 2011, or sometime prior. Additionally, Detective Boettcher said that image was copied multiple times and could be found on different hard drives. While the date established by the testimony does not exactly match the November 17 date alleged by the State, Detective Boettcher's testimony that the image could have been scanned prior to December 9 is sufficient to establish that the offense occurred on or about November 17.

Last, count 4 addressed the images of C.C.M. that were digitized on or about December 9, 2011. Like the prior two counts, Detective Boettcher's testimony provided evidence to support the date of the conviction. Detective Boettcher testified that he found digital copies of some of C.C.M.'s slides that were scanned into a computer on December 9, 2011. In sum, sufficient evidence shows that Mr. Polk was the person who duplicated the prohibited images at the place and time alleged by the State for counts 2, 3, and 4.

C.      *Whether the remaining possession count comprises the same criminal conduct as the dealing counts*

Mr. Polk contends that the trial court should have counted the remaining possession count as the same criminal conduct as the dealing counts because possession is a continuing offense and the same images of the women form the same basis for both offenses.

We review a sentencing court's decision on same criminal conduct for an abuse of discretion or misapplication of the law. *State v. Graciano*, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). "Under this standard, when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Id.* at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Id.* at 538.

Generally, "[w]hen imposing a sentence for two or more current offenses, the court determines the sentence range for each current offense by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score." *State v. Ehli*, 115 Wn. App. 556, 560, 62 P.3d 929 (2003) (footnote omitted). However, some or all current offenses can count as one crime if the court finds that those offenses encompass the same criminal conduct. RCW 9.94A.589(1)(a). "Same criminal conduct"

18

means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a).

The facts show that the remaining second degree possession of depictions offense and the four second degree dealing in depictions offenses involve the same victims. Second degree possession is not gauged per image, but per incident. The incident for possession involved the same victims as the dealing in depictions counts 1, 2, 3, and 4. Also, the offenses occurred at the same time and place considering possession is a continuing offense, and Mr. Polk needed to be in possession of the photographs in order to duplicate them.

However, whether the crimes involve the same criminal intent is a closer issue. "Intent is to be viewed objectively rather than subjectively." *State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991). We first look to the underlying statutes to determine whether the intents of each statute, if any, are the same or different for each count. *Id.* If the intents are different, then the offenses are counted as separate crimes. *Id.* If the intents are the same, then we look objectively to the sentencing facts and determine whether a particular defendant's intent was the same or different with respect to each count. *Id.* If the intents are the same, then the counts constitute the same criminal conduct. *Id.*

19

Second degree possession requires a person to knowingly possess a visual or printed depiction of a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g). RCW 9.68A.070(2)(a). It is clear from this statute that the intent involves *knowing possession* of the prohibited image.

For second degree dealing in the depictions of a minor engaging in sexually explicit conduct, a person must knowingly develop, duplicate, publish, print, disseminate, exchange, finance, attempt to finance, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g). RCW 9.68A.050(2)(a)(i). It is clear from this statute that the intent involves the *knowing propagation* of the prohibited image, either by disseminating images to another party or by creating more copies of a current image.

Thus, the count for second degree possession of depictions offense is not the same criminal conduct as the counts for second degree dealing in depictions offense. One statute addresses an offender's intent to possess the prohibited images, whereas the other addresses an offender's propagation of these images. Because the intent of each offense is different, Mr. Polk's convictions do not constitute the same criminal conduct.

20

D.     *Whether the sentencing court lacked statutory authority to impose a no contact order that was not crime related*

Mr. Polk challenges the court's imposition of a crime-related no contact order with R.E.R.

The imposition of crime-related prohibitions is reviewed for an abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). A court abuses its discretion when its decision is manifestly unreasonable or has an untenable basis. *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997).

A sentencing court has the discretion to impose crime-related prohibitions. *See* RCW 9.94A.505(8). Crime-related prohibitions include no contact orders. *Armendariz*, 160 Wn.2d at 119. The imposition of a no contact order prohibits conduct that relates directly to the circumstances of the crime charged. *Id.* at 113.

The no contact order with R.E.R. is not crime related. Mr. Polk was convicted of second possession of depictions of minors engage in sexually explicit conduct and second degree dealing in depictions of sexually explicit conduct. Images of R.E.R. were not found in depictions that Mr. Polk possessed or copied. The State did not present evidence of R.E.R.'s contact with Mr. Polk at trial. The no contact order between Mr. Polk and R.E.R. is not crime related. The court abused its discretion in imposing this condition.

21

No. 31935-1-III
*State v. Polk*

    We reverse and remand for resentencing. A resentencing hearing is required to correct the double jeopardy violation for multiple counts of second degree possession of depictions of minors, and to vacate the no contact order applicable to R.E.R. Mr. Polk is entitled to recalculation of his offender score and reconsideration of the exceptional sentence imposed for multiple current convictions.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____    _____
Siddoway, C.J.                              Brown, J.

22