IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33526-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK MURILLO, IV, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Frank Murillo IV appeals his sentence following his conviction

on ten counts of possession of depictions of a minor engaged in sexually explicit conduct.

He claims the trial court erred when concluding, for purposes of Murillo's offender score,

that the court needed to consider each conviction as based on separate conduct and when

sentencing Murillo to seven years in prison. Murillo also challenges the imposition of

legal financial obligations and community custody conditions. We agree with Murillo's

contention regarding his offender score, and we remand for resentencing, during which

the trial court should review whether the ten convictions arise from the same criminal

conduct.

## FACTS

The prosecution of Frank Murillo IV arises from his photographing and

videotaping sexual conduct with his sixteen-year-old girlfriend. On February 14, 2014,

Murillo, then twenty, took his girlfriend to a hotel room and the two engaged in sex. During the encounter, Murillo took sexually explicit pictures and videos.

On February 19, 2014, Pasco Police Detective Chad Pettijohn saw Frank Murillo driving to and from Murillo's hotel. Detective Pettijohn knew that the State had suspended Murillo's driver's license. Pettijohn called Murillo's Community Corrections Officer, Charles Dorendorf, who searched, with Pettijohn, Murillo's car and his hotel room. Dorendorf and Pettijohn found 78.6 grams of marijuana. Incident to an arrest for the marijuana, Detective Pettijohn searched Murillo and found two cell phones.

Pasco Detective Chad Pettijohn obtained a warrant to search Frank Murillo's cell phones for evidence of narcotics transactions. During the scan of the phone, Pettijohn observed videos containing graphic sexual content of Murillo and a woman who appeared underage. After garnering an amended search warrant, Detective Robert Benson extracted, from one phone, two videos and hundreds of sexually explicit photos of the young woman. Detective Pettijohn identified the female in the videos and pictures as Murillo's sixteen-year-old girlfriend. The girlfriend later acknowledged being the female in the videos, and she stated she knew not of the photography.

Frank Murillo IV belongs to the Varrio Rat Pack, a Tri-Cities street gang. Police officers believed that, on February 19, 2014, the date of Murillo's arrest, another gang member visited Murillo in Murillo's hotel room.

2

PROCEDURE

The State of Washington charged Frank Murillo IV with one count of sexual exploitation of a minor, ten counts of first degree possession of depictions of a minor engaged in sexually explicit conduct, and possession of marijuana with the intent to deliver, all occurring on or about February 18, 2014. Following trial, the jury found Murillo guilty of only the ten counts of possession of depictions of a minor engaged in sexually explicit conduct.

A presentence investigation report concerning Frank Murillo included the following information:

> When asked, Mr. Murillo said that he made the videos on different days, but all occurred in the month of December. He said that [his girlfriend] participated in the making of the videos, and he had forgotten about them when they were discovered by law enforcement.
> . . . .
> Mr. Murillo said he dropped out of school in the 8th grade. He said he began attending an alternative high school shortly after, but his attendance was sporadic. Mr. Murillo said he was close to graduating when arrested for the instant offense.
> Mr. Murillo said his work history consists mostly of field labor, but he has worked the last 4 years holding a sign for Liberty Tax Service. When asked about the job, Mr. Murillo said the work is only during the tax season, and consists of dressing up in a Statue of Liberty costume and dancing on the sidewalk to attract customers.
> . . . .
> [Murillo] reports receiving $180.00 a month in food assistance from the State of Washington. . . . [He] reports owing $6000.00 in back child support. He says he currently is required to pay $160.00 per month . . . . When asked, Mr. Murillo said he is only required to pay child support for one of his three children.

Mr. Murillo denies having any consumer debt, but reports owning [sic] around $30,000.00 in fines and restitution. Mr. Murillo said the majority of this amount is in collections.

. . . .

Mr. Murillo reports being homeless just prior to his arrest for this offense. . . .

. . . .

Mr. Murillo has a lengthy criminal history, mostly misdemeanors, and appears to be actively involved in a local gang. He appears to be somewhat intelligent, but clearly lacks direction in life, making a multitude of poor choices.

Clerk's Papers (CP) at 39, 44-46.

At sentencing, Frank Murillo argued that the possession of depictions of a minor engaged in sexually explicit conduct convictions count only as one crime for purposes of his offender score because all ten counts arose from the same criminal conduct. In response, the State contended:

[PROSECUTOR]: I'll make a brief additional record that each count would be counted against each other also there was no evidence in this case that the photographs were made at the same place and time. They all involve the same victim. . . . Mr. Murillo said he made the video on different days regarding [sic] the photographs. There is one file image that is distinctly different from the others. The State charged possession, he possessed them on the same date. As to where [sic] they were made, they weren't at the same point in time so they are not the same criminal [conduct].

Report of Proceedings (RP) (June 2, 2015) at 10-11. The State added:

[PROSECUTOR]: It's clear from the law [RCW] 9.68A.070([1])(c) that these are to be treated as separate offenses. That being the case, the defendant's offender score is nine plus, which makes his range 77 to 102 months.

4

No. 33526-7-III
*State v. Murillo*

RP (June 2, 2015) at 14.

The trial court agreed with the State, calculated Murillo's offender score as 12.5,

and sentenced Murillo to a standard range of seven years on each conviction, with the

sentences running concurrently. During the sentencing hearing, the trial court remarked:

> The Court believes that after reviewing [*State v. Polk*, 187 Wn. App.
> 380, 348 P.3d 1255 (2015)] and reviewing the statute 9.68A.070,
> specifically subsection [1](c) that the Court is bound to treat each of the
> depictions as separate incidences of conduct. That results in a score of 12
> and a half points. For our purposes nine plus. This yields a range of 77 to
> 102 months.

RP (June 2, 2015) at 16-17.

During sentencing, the trial court engaged in the following colloquy with Frank

Murillo's attorney concerning payment of legal financial obligations:

> THE COURT: One additional question. Does your client agree upon
> release from confinement he is capable of employment and thus capable of
> paying costs on the fines[?]
> MR. HARMS [DEFENSE COUNSEL]: I would say however long
> he is in prison. And when he comes out as a registered sex offender, I
> couldn't tell you that for sure.
> THE COURT: He is physically able.
> MR. HARMS: Yes.
> THE COURT: And the extent of his other existing financial
> obligations are again he has child support and owes approximately 30,000
> in fines and restitution; is that correct?
> MR. HARMS: I believe that is correct.

RP (June 2, 2015) at 15.

The trial court imposed $1,278.48 in legal financial obligations. The legal

financial obligations included: a $500.00 victim assessment fee, a $200.00 filing fee, a

5

$87.48 sheriff service fee, and a $500.00 fine. The trial court struck the felony DNA

collection fee. The court commented during the sentencing hearing:

> Court costs total $1,378.48. Again the defendant has indicated
> through counsel that he is physically able to work. While he does have
> prior obligations based on prior convictions and a current child support
> obligation to one child with the reasonable belief that he may eventually
> have to pay support for the other two children I still believe that an
> imposition of fines are appropriate.

RP (June 2, 2015) at 17.

The trial court also imposed the following community custody conditions on

Frank Murillo:

> 5. You shall submit to urine, breath, or other screening whenever
> requested to do so by the program staff or your community corrections
> officer.
> . . . .
> 13. Have no contact with any person(s) under the age of 18, unless
> prior approval has been received by the community correction officer, and
> sex offender treatment therapist. Approved contact shall only be in the
> presence of an adult who the defendant has disclosed his/her full offense
> history, supervision conditions, and any treatment rules.
> . . . .
> 15. Do not enter into or frequent business establishments or areas
> that cater to minor children. Such establishments may include but are not
> limited to video game parlors, libraries, parks, shopping malls, pools,
> skating rinks, school grounds, or any areas routinely used by minors as
> areas of play/recreation.
> . . . .
> 20. Do not possess or consume alcohol.
> 21. Do not enter bars, taverns, lounges, or any place/business where
> alcohol is the primary sale item.
> . . . .
> 25. Do not dress wholly in one color or display any other gang-
> associated dress items, based on color, to include, but not limited to, dew

6

rags, kerchiefs, belts, shoelaces, or any other item deemed so by CCO.

26. Do not have contact with any person identified by DOC or law enforcement as being a member or associate of any gang.

27. Do not use your own or any other's gang "tags", nicknames or monikers, unless asked for such by law enforcement, DOC or other appropriate legal authority.

28. The defendant shall consent to unannounced examinations of any computer or cell phone equipment owned or controlled by the defendant which may result in the retrieval and copying of all data from the computer and any internal or external peripherals and may involve removal of such equipment for the purpose of conducting a more thorough investigation.

CP at 15-17.

## LAW AND ANALYSIS

On appeal, Frank Murillo assigns three errors to his sentencing. First, the trial court failed to exercise discretion when determining whether all of his possession of depiction of a minor engaging in sex convictions were part of the same course of criminal conduct. Second, the trial court imposed impermissible community custody conditions. Third, the trial court erroneously imposed legal financial obligations when he probably lacked the ability to pay.

### Same Criminal Misconduct

This appeal juxtaposes two criminal statutes, one that creates the crime of possession of depictions of a minor engaged in sexually explicit conduct and the second that discusses the calculation of offender scores for purposes of sentencing. The trial court convicted Frank Murillo of ten counts of possession of depictions in the first

degree. Our first statute, RCW 9.68A.070, creates the crime of possession of depictions:

(1)(a) A person commits the crime of possession of depictions of a minor engaged in sexually explicit conduct in the first degree when he or she knowingly possesses a visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(a) through (e).

(b) Possession of depictions of a minor engaged in sexually explicit conduct in the first degree is a class B felony punishable under chapter 9A.20 RCW.

(c) *For the purposes of determining the unit of prosecution under this subsection, each depiction or image of visual or printed matter constitutes a separate offense.*

(2)(a) A person commits the crime of possession of depictions of a minor engaged in sexually explicit conduct in the second degree when he or she knowingly possesses any visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4)(f) or (g).

(b) Possession of depictions of a minor engaged in sexually explicit conduct in the second degree is a class C felony punishable under chapter 9A.20 RCW.

*(c) For the purposes of determining the unit of prosecution under this subsection, each incident of possession of one or more depictions or images of visual or printed matter constitutes a separate offense.*

(Emphasis added.)

RCW 9.68A.070 categorizes the crime of possession of depictions between first degree and second degree depending on the extremity of the sexual conduct performed in the depiction. The first degree crime involves pictures of:

(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals;

(b) Penetration of the vagina or rectum by any object;

(c) Masturbation;

(d) Sadomasochistic abuse;

8

(e) Defecation or urination for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4). The second degree crime entails images of:

(f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and
(g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.

RCW 9.68A.011(4).

Note that RCW 9.68A.070 announces different units of prosecution depending on whether the crime charged is first degree or second degree possession of depictions. The unit of prosecution for first degree possession is each depiction or image. RCW 9.68A.070(1)(c). The unit of prosecution for second degree possession is each incident of possession. RCW 9.68A.070(2)(c). To our limited knowledge, law enforcement caught Frank Murillo with only one incident of possession, but found numerous images of sexual activity. Because of the nature of the images, the State exercised its prerogative to charge ten counts.

Our second statute, RCW 9.94A.589, a sentencing statute, proclaims:

(1)(a) Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that *some or all of the current offenses encompass the same*

9

> *criminal conduct then those current offenses shall be counted as one crime.* Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition applies in cases involving vehicular assault or vehicular homicide even if the victims occupied the same vehicle.

(Emphasis added.)

RCW 9.94A.589(1)(a) differs from RCW 9.68A.070 in purpose and concepts. The unit of prosecution for a crime under RCW 9.68A.070 determines how many charges the State may file for similar conduct. The notion of "same criminal conduct" under RCW 9.94A.589 entails the offender score calculated on sentencing. A unit of prosecution determination diverges from a resolution of whether the units of prosecution entail the same criminal conduct. Thus, the latter determination requires a separate analysis. *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006); *State v. Thompson*, 192 Wn. App. 733, 736 n.1, 370 P.3d 586 (2016).

On appeal, Frank Murillo challenges his offender score, not his convictions for ten units of prosecution. He complains that the trial court did not exercise its judgment when reviewing whether to consider the ten convictions as the same criminal conduct. A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law. *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999). A

10

trial court abuses its discretion when its decision is based on untenable grounds or reasons. *State v. Mehrabian*, 175 Wn. App. 678, 710, 308 P.3d 660 (2013).

The State argues that the trial court committed no error and only discussed the unit of prosecution in its oral ruling. We disagree based on the following salient passage:

> The Court believes that after reviewing *Polk* and reviewing the statute 9.68A.070, specifically subsection [1](c) that the Court is *bound* to treat each of the depictions as separate incidences of conduct. That results in a score of 12 and a half points.

RP (June 2, 2015) at 16-17 (emphasis added). The trial court was correct that the court, under RCW 9.68A.070, needed to treat each depiction as a separate incident for purposes of the number of convictions without regard to their sentencing consequences. But the trial court made the comment in the context of calculating the offender score, so the comment inevitably influenced the calculation of the offender score under the sentencing statute, RCW 9.94A.589(1)(a). The trial court's ruling shows that the trial court believed it lacked discretion to conclude that the conduct leading to the discrete convictions constituted the same criminal conduct for purposes of sentencing. *State v. Polk*, 187 Wn. App. 380, 348 P.3d 1255 (2015), mentioned by the trial court, involved the unit of prosecution against David Polk, not his offender score.

The trial court commits error when it possesses discretion but erroneously believes it has no discretion. *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 332, 166 P.3d 677 (2007); *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). Thus, we

11

hold the trial court committed error in sentencing.

Under RCW 9.94A.589(1)(a), a court will consider two or more crimes the "same criminal conduct" if the crimes: (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. *State v. Price*, 103 Wn. App. 845, 855, 14 P.3d 841 (2000). All three prongs must be met. *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). If any one of these elements is missing, the sentencing court must count the offenses separately in calculating the offender score. *State v. Knight*, 176 Wn. App. 936, 959, 309 P.3d 776 (2013). The defendant bears the burden of establishing same criminal conduct. *State v. Wright*, 183 Wn. App. 719, 733, 334 P.3d 22 (2014). The number of images possessed by Frank Murillo may influence the trial court's decision as to whether to treat two or more crimes as the same criminal conduct, but the number does not control. Nor do the units of prosecution govern.

Frank Murillo asks this reviewing court to engage in the same criminal conduct analysis and hold that all ten convictions qualify as the same conduct. Murillo emphasizes that the nature of the crime is possession of the images, not the photographing or videotaping of the sexual activity, and that he possessed images of only one victim. In response, the State observes that Murillo took the images on separate dates, the respective images depict varying sexual acts, and Murillo downloaded the images at different times. The State argues that the respective counts involved different intents.

12

We decline to engage in the same criminal conduct analysis without the trial court first undertaking this task. Since the trial court holds discretion in determining whether one or more convictions constitute the same criminal conduct for purposes of the offender score, we remand to the trial court to exercise its discretion.

## Other Assignments of Error

On appeal, Frank Murillo challenges the imposition of some of his community custody conditions. He assigns error to conditions precluding contact with his own children, association with gang members, imbibing of alcohol, and entry into bars. He complains of conditions requiring the undergoing of breath screening and the consenting to computer searches by law enforcement. Murillo did not challenge these conditions before the trial court. Still, a defendant may challenge an erroneously imposed sentence for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

On appeal, Frank Murillo also argues that the trial court did not engage in a sufficient individualized inquiry into his financial ability to pay legal financial obligations. Murillo also challenges the constitutionally of the obligations.

Because we remand for resentencing and a new review of Frank Murillo's sentencing score, we do not address Murillo's other assignments of error with regard to his sentence. Murillo may assert his arguments against the community custody conditions and concerning legal financial obligations before the trial court.

13

Statement of Additional Grounds

Frank Murillo raises four issues in his statement of additional grounds (SAG).

> In a criminal case on direct appeal, the defendant may file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel.
>
> . . . .
>
> Reference to the record and citation to authorities are not necessary, or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors. . . . [T]he appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review. Only documents *that* are contained in the record on review should be attached or referred to in the statement.

RAP 10.10(a)-(c).

We reject all of Frank Murillo's additional grounds. First, Murillo may argue that Detective Robert Benson did not prove that the photos presented at trial came from his cell phone. This contention fails because Detective Benson testified extensively at trial about ensuring that the photos from the phone were the photos he delivered to Detective Chad Pettijohn. Second, Murillo asks this court: "what defines the final [decision] to be considered oral sex?" SAG at 1. This question may ask the court to view the contents of the photos to determine if the depictions are sufficiently sexual in nature to satisfy one of the elements of the charged crime. Nevertheless, Murillo has not requested copies of the photos to be part of the record on appeal. Therefore, this court cannot engage in that

14

inquiry. Third, Murillo may claim a lack of the sufficiency of the evidence regarding knowing possession. Nevertheless, we are unable to respond because Murillo has failed to inform this court of the nature and occurrence of the alleged errors. Finally, Murillo asks this court to evaluate "all the motions presented in court . . . to make sure the judge made the right [decisions] in the case." SAG at 2. Nevertheless, this request does not allege error nor inform the court of the nature and location of such error. Under RAP RAP 10.10, we do not search the records for purported errors.

## CONCLUSION

We remand for resentencing consistent with our opinion. We deny the State costs on appeal because Frank Murillo has in part prevailed on his primary contention.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

15