IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36795-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ALEX MICHAEL JONES, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Alex Jones appeals his conviction for possession of a stolen vehicle

on the grounds of insufficiency of evidence and prosecutorial misconduct. We hold that

the State presented sufficient evidence to convict Jones, but that the prosecuting attorney

engaged in misconduct when misstating to the jury the legal standard for possessing a

vehicle one knows to be stolen. We remand for a new trial.

FACTS

This prosecution concerns the possession of a Chevrolet El Camino by the

accused, Alex Jones. The State claims Jones knew the car to be stolen. Because Alex

Jones challenges the sufficiency of evidence for his conviction, we narrate the facts in a

light favorable to the State. When we later relate some trial testimony, we present conflicting testimony.

Michael Troyer owned the El Camino. During his retirement, Troyer earned extra money by buying, repairing, and reselling cars and motorcycles. In November 2018, Troyer purchased the 1981 Chevrolet El Camino from a friend, Lee Root, who purchased the car from an estate sale. Troyer paid in the aggregate $1,500 for the El Camino and another car purchased from Root. Troyer obtained the title to the El Camino, but not a bill of sale. The car's title listed Frank Montgomery, the owner previous to Root, as the registered owner.

The El Camino did not operate, so Michael Troyer intended to repair the car and resell it or to separately sell its parts. Troyer transported the El Camino by trailer to an automobile shop on South Pines Road in Spokane Valley. Denny Hogan, Troyer's friend, owned the building and rented Troyer space to work on his projects. The El Camino transmission functioned, but the car's motor, distributor, and wiring needed repair. The interior of the car was in good condition. After investing time and money to fix the El Camino, Troyer decided to sell it.

Denny Hogan also maintained a park-and-sell lot on his South Pines Road property, so Michael Troyer placed the El Camino on the lot in early January 2019 for the

purpose of selling it.  The car's ignition then worked, and the vehicle had keys.  The

glove box to the car was empty.  The car contained no shaved keys, trip permits, or tools.

The El Camino had a license plate affixed to the rear, but Troyer never licensed the

vehicle.  Troyer stuck a for-sale sign in the window.

At trial, Michael Troyer could not recall the date that the El Camino disappeared

from the sales lot on South Pines Road, but he testified the car disappeared between 9:30

p.m. on the day he put the car on the lot and 10:00 a.m. the following morning.  Troyer

telephoned law enforcement that morning to report the missing El Camino as stolen.

On January 20, 2019, Spokane County Sheriff's Deputy Garrett Spencer patrolled

the streets of Spokane Valley.  Deputy Spencer wore a uniform and drove a marked

vehicle.  At 1:00 a.m., Spencer observed a white Chevrolet El Camino, with a broken or

malfunctioning headlight, turn into an industrial area off Broadway Avenue.  As the

El Camino approached Deputy Spencer, the car sped down a side street.  Spencer pursued

the El Camino and, as he neared the car, the El Camino rapidly executed multiple turns

down more side streets.  Deputy Spencer also noticed that the vehicle bore no license

plates.  Spencer activated his car's emergency light and siren.  The El Camino pulled to

the shoulder of the roadway as if to stop, and then returned to the street and raced to

another street.  Spencer sounded the siren a second time.  The El Camino then stopped.

3

When approaching the El Camino's front passenger side, Deputy Garrett Spencer saw a temporary trip permit affixed to the back window. A three-day trip permit allows a person to lawfully drive an unlicensed or unregistered vehicle on public roads. The driver of the vehicle, Alex Jones, was the sole occupant of the vehicle. Deputy Spencer asked Jones if he could inspect the trip permit, and Jones obliged. The trip permit was incomplete. The back side of the permit contained none of the required vehicle information and listed "Jhon Doe" as the operator. 1 Report of Proceedings (1 RP) at 179. A valid trip permit must contain a vehicle identification number and the operator's name. Deputy Garrett Spencer asked Alex Jones to exit the El Camino. Jones complied, but fidgeted while standing, so Spencer placed him in handcuffs. Jones told Deputy Spencer that he had purchased the El Camino from a friend "around the corner" earlier that day. 1 RP at 83. Jones possessed no bill of sale or other documents evidencing his ownership of the car. Deputy Spencer peered inside the car and saw that the ignition had been removed. Jones operated the El Camino with a socket extension rather than a key.

Deputy Garrett Spencer placed Alex Jones under arrest for the trip permit violation. Spencer looked again into the El Camino and saw a license plate on the floorboard. The license plate bore tabs from 2000. Spencer asked dispatch to research the plate number, but dispatch found no information from the Department of Licensing

4

regarding the license plate number. Dispatch, however, informed Deputy Spencer of an earlier police report listing the El Camino as stolen. Spencer also learned that Jones' driver's license was suspended.

Deputy Garrett Spencer further perused the inside of the El Camino. He found the ignition on the seat, a set of shaved keys in the glove box, and two screwdrivers on the floor. A backpack, claimed by Alex Jones, contained two other trip permits, one with the name "Jhon Doe," and with the same license plate number as the permit displayed in the window. According to Deputy Spencer, one commits forgery if he possesses two trip permits with the exact same plate number. Spencer could not read the El Camino's vehicle identification number because of faded markings on the car door number and rust on the window number.

Deputy Garrett Spencer called Michael Troyer, who had earlier reported the El Camino as stolen. Troyer confirmed someone stole the car from him. Troyer had last seen the El Camino two days earlier. Troyer sent a picture of the keys and the title to Spencer.

Two days later, Michael Troyer retrieved the El Camino from the impound lot. The El Camino did not start, the shifting column was disconnected, the steering column had been disassembled, the ignition switch was broken, a headlight was broken, the

license plate had been removed and placed inside the vehicle, the exhaust pipe was flattened, and a different battery had been installed. Troyer also noticed screwdrivers, a vice grip chain, and a phone charger plugged into the cigarette lighter that were not his possessions.

Michael Troyer gave no one, other than his friend Bud Selby, permission to drive the El Camino. Troyer never made a second set of keys for the vehicle.

PROCEDURE

The State of Washington charged Alex Jones with possession of a stolen motor vehicle. The prosecution proceeded to a jury trial.

During trial, Michael Troyer identified the El Camino and described the damage to its interior from photographs the State admitted as exhibits. By the time of trial, Troyer had traded the vehicle and did not possess its certificate of title.

At trial, Deputy Garrett Spencer testified to his stopping of the El Camino early on January 20, 2019, and his investigation of the stolen car. Forensic technician Barocka Rubenthaler testified that she tested the set of shaved keys for fingerprints and found none. Rubenthaler did not examine any other items from inside the El Camino for fingerprints.

After the State rested its case, Alex Jones moved for dismissal or a finding of not guilty based on insufficient evidence. Jones argued the State failed to prove each element of the crime because it did not show that Michael Troyer was the owner of the vehicle or the person entitled to its possession. The trial court denied the motion.

In his presentation of evidence, Alex Jones attempted to cast doubt on the State's claim that Michael Troyer owned the El Camino. The defense called James Banks to testify. Banks drives a tow truck and sells cars for scrap metal. Banks testified that he learned, in January 2019, about a 1981 Chevrolet El Camino from a friend named "Alli." Alli told Banks that she just got the car and inquired whether Banks might be interested in scrapping or selling it. We do not know how Alli allegedly acquired the El Camino. According to Banks, Alli was "just trying to get rid of it." 2 Report of Proceedings (2 RP) at 5. Alli wanted a couple hundred dollars because the El Camino did not run. Banks averred that he looked at the car in a lot off of Pines Road just after sunrise one morning. Banks testified that the El Camino appeared to be abandoned. The car had a flat front tire and garbage in its bed. When asked whether the vehicle had keys, Banks responded that Alli had no keys to give to him. According to Banks, to be certain that the vehicle was not stolen, he downloaded an application on his phone called VinCheck, and asked the entity to check on the car's status. At the same time, Banks testified that he

7

never checked the vehicle identification number from his phone because he could not read the number due to its rust. With the intention of scrapping the El Camino, Banks purchased the keyless El Camino and towed it with his truck to his house.

According to his testimony, James Banks, at the time of the purchase, believed Alli would later provide him with documentation for the sale. Banks also declared that he earlier purchased other vehicles from Alli, and he had no reason to distrust her.

James Banks testified that, two days after his buying the El Camino, Alex Jones approached his house and expressed an interest in the car. To access the interior, Banks and Jones used a "Slim Jim" tool. 2 RP at 9. To render the car operable, the two installed spark wires and removed the ignition. They used a socket extension to start the car. Banks also testified that he replaced the battery.

During trial, James Banks described the El Camino as "junk." 2 RP at 10. After scrubbing the window, Banks finally saw the full vehicle identification number. Alex Jones then downloaded a VIN application on his phone to confirm the status of the car. The results showed no liens on the vehicle and that the car was not stolen.

On cross-examination, James Banks clarified that he did not employ the "VinCheck" application on the El Camino until he had already towed it to his property and with Alex Jones present. 2 RP at 25. Banks testified that the last eight digits of the

8

vehicle identification number searched by him and Jones were "BD412201." 2 RP at 29.

Those numbers conflicted with the vehicle identification number found by Deputy

Garrett Spencer on the El Camino.

James Banks further testified that Alex Jones traded a Durango for the El Camino.

The swap occurred around midnight one night. Before leaving the property, Jones

removed the license plate, while asserting that he could not simultaneously lawfully

display the license plate and trip permits. Banks provided no ownership paperwork or a

bill of sale to Jones. Banks testified that Jones eagerly desired the El Camino and to take

possession that night.

Alex Jones did not testify at his trial.

At the request of the State of Washington, the trial court delivered jury instruction

9 on the legal meaning of "knowledge:"

> A person knows or acts knowingly or with knowledge with respect to
> a fact, circumstance or result when he or she is aware of that fact,
> circumstance or result. It is not necessary that the person know that the
> fact, circumstance or result is defined by law as being unlawful or an
> element of a crime.
> If a person has information that would lead a reasonable person in
> the same situation to believe that a fact exists, the jury is permitted but not
> required to find that he or she acted with knowledge of that fact.

No. 36795-9-III
*State v. Jones*

Clerk's Papers at 70. The trial court took jury instruction 9 from 11 WASHINGTON

PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 222 (4th ed.

2016). Alex Jones did not object to the instruction.

Because of the second of Alex Jones' assigned errors on appeal, I quote portions of

the prosecuting attorney's closing argument. At the beginning of his closing argument,

the prosecuting attorney commented:

> [THE STATE:] There's an old saying, "If it walks like a duck, quacks like a duck, it's a duck," and in this case, the El Camino was the duck, and Mr. Jones knew it was a duck. And certainly if he didn't know, which is highly doubtful, *he should have known. He should have known* he was driving a duck.

2 RP at 69 (emphasis added). The State's attorney added later:

> The issue in this case is whether Mr. Jones knew the car was stolen, *or significantly, if Mr. Jones ought to have known* that the car was stolen based on the information that was available to him, and that the car was withheld or appropriated by Mr. Jones for somebody else's use other than the true owner or a person entitled thereto.

2 RP at 75 (emphasis added). The prosecuting attorney reiterated the court's definition of

"knowledge:"

> So what is "knowingly" under the law? Because we're lawyers, we can take any word that we use every single day and make it much, much more complicated than it has to be as this instruction shows. A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance,

10

or result. I left out a portion of the instruction that I don't think is helpful here.

It goes on to say, "If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, you, the jury, *are permitted, but you're not required to come to the conclusion beyond a reasonable doubt that the person actually had knowledge,* and, you know, that makes sense. If a person sees 15 different warnings in a small room that the temperature in the room is going to be turned up to a 100 degrees, you can't complain the temperature got turned up to 100 degrees because you didn't know. Whether you read those signs or not, we're going to impute that knowledge to him. We're going to attribute him as knowing that knowledge, *because anybody, who's a reasonable person,* would be able to read those signs.

And in this case, Mr. Jones had many, many signs that something was fishy with this car. I will argue to you in a moment that *Mr. Jones actually knew*, *but that's not what you have to find beyond a reasonable doubt*. If you're satisfied that *he should have known that a reasonable person in his situation would have known*, then you can find for purposes of liability for this crime, he did know.

2 RP at 76-77 (emphasis added).

The State's attorney listed for the jury examples of "red flags" that a reasonable person should have noticed: the presence of the questionable trip permits, the removal of the license plate, the damage to the steering wheel, the use of the socket extension to start the car, and the presence of shaved keys. The prosecutor reiterated that the red flags could be "impute[d] to Mr. Jones" such that "we really know he must have known." 2 RP at 77-78.

The prosecuting attorney summarized:

11

And at some point, when he wasn't really able to lose the police or have the police lose interest in his car, Mr. Jones had to finally make the decision, after pulling over and faking it and driving around, that he was going to have to pull over. *That shows his actual knowledge*. This isn't imputed knowledge.

. . . .

*Mr. Jones knew that car was stolen*, so he was trying to give some kind of excuse without implicating himself. And possibly the one kind thing that Mr. Jones did in this case was not use his friend's name Mr. Banks, if that was indeed where he got the car, because he could have gotten Mr. Banks in trouble potentially. So that also indicates knowledge that the car's stolen and he doesn't want to implicate any of his other friends.

But you can tell from what he didn't say, what he chose to say and what he chose not to say that *Mr. Jones knew* this car was stolen.

So, again, the law says that if he either knew *or should have known* he was driving a stolen car, then you can find him guilty of possessing a stolen car, and you're going to hear, and you did hear a lot of testimony about, well, who stole this car, why didn't we have video surveillance from the theft of the car, why didn't we have anybody interviewed who was working at the car lot. The fact is that if Mr. Jones would have stolen the car, I guess that would have closed the door on this.

But that's not what he's charged with. He's charged only with possessing a stolen car. And the only thing you have to find to find him guilty in this case *was that he knew the car was stolen* because every element has been proved. And he did know it. *He should have known, if he didn't actually know it*, but you can find beyond a reasonable doubt that he did know actually what he was doing. You should hold him accountable for that behavior.

2 RP at 79, 82-83 (emphasis added). Alex Jones did not object to any of the quoted

prosecutor's remarks.

The jury convicted Alex Jones of possession of a stolen motor vehicle.

12

LAW AND ANALYSIS

Alex Jones raises two assignments of error on appeal. First, the State presented insufficient evidence to convict him of possession of a stolen vehicle. Second, the prosecuting attorney engaged in prosecutorial misconduct when telling the jury that it could convict him if it found he should have known the El Camino was stolen because the State needed to prove actual knowledge. If we sided with Jones on his first assignment of error, we would dismiss the charge with prejudice. If we accept Jones' second assignment of error, we would remand for a new trial. We thus address the sufficiency of evidence first.

Sufficiency of Evidence

Alex Jones contends that the State presented insufficient evidence to establish two elements of the crime of possession of a stolen vehicle: (1) that he appropriated the El Camino for the use of another other than the true owner or person entitled thereto, and (2) that he knew the vehicle was stolen. We disagree.

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In reviewing a challenge to the sufficiency of the evidence, we ask whether, after viewing the evidence in the light

13

most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. *State v. Salinas*, 119 Wn.2d at 201. An accused's claim of insufficiency of evidence admits the truth of the State's evidence and all inferences reasonably drawn therefrom. *State v. Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence carry equal weight when reviewing a challenge to the sufficiency of the evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). This court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

RCW 9A.56.068 encompasses the crime of possessing a stolen motor vehicle. The statute circularly reads:

> (1) A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle.

In turn, RCW 9A.56.140(1) defines "possessing stolen property:"

> "Possessing stolen property" means *knowingly* to receive, retain, possess, conceal, or dispose of stolen property *knowing* that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

14

(Emphasis added.)  Washington courts apply the definition of "possessing stolen property" found in RCW 9A.56.140(1) to the crime of possessing a stolen vehicle. *State v. Lakotiy*, 151 Wn. App. 699, 714, 214 P.3d 181 (2009).  Thus, the State must prove beyond a reasonable doubt that the accused knew the vehicle to be stolen.  *State v. Lakotiy*, 151 Wn. App. at 713-14.

Alex Jones concedes that he possessed the El Camino.  Nevertheless, he contends the State presented insufficient evidence to support that someone, other than him, owned or had superior possessory rights to the El Camino.  Jones emphasizes that: (1) Michael Troyer possessed no bill of sale or other documentation showing he owned the car, and (2) the car was not registered in Troyer's name or with the Department of Licensing.  Jones highlights that the only evidence the State produced to show Troyer to be the true owner of the El Camino was Troyer's self-serving testimony.

Even if we agreed that the State only presented the testimony of Michael Troyer to establish his ownership of the El Camino, we must still conclude that the State presented sufficient evidence.  As indicated above, we defer to the trier of fact in determining the credibility of witnesses, and the jury here could have found Troyer's testimony to be credible, if not compelling.

Michael Troyer told the jury how he acquired the El Camino from a friend, Lee

15

Root, in November 2018. Troyer transported the car to an automotive shop where Troyer

repaired the car. Troyer placed the El Camino for sale in a park-and-sell lot. Troyer's

testimony distinguished between the condition of the El Camino at the time he offered it

for sale and its condition after repossessing it from the impound lot. Troyer informed the

jury that he knew the name of the individual listed on the title of the vehicle, Frank

Montgomery, from which the jury could reasonably conclude that Troyer possessed the

title before trading the El Camino.

Alex Jones next contends that the State presented insufficient evidence to prove he

knew the El Camino he had purchased from James Banks was stolen. Jones highlights

that Alli assured Banks that the car was not stolen. Jones infers that Banks told him the

vehicle was not stolen. Jones emphasizes that he knew who sold him the El Camino.

Banks and Jones checked the VinCheck application for liens or other information. Jones

traded a Durango for the El Camino, and, although he wanted the paperwork on the car,

he agreed to wait until Alli supplied it to Banks.

Alex Jones also attacks the State's evidence allegedly used to create the inference

of knowledge. He contends that the jury could not reasonably conclude he ever touched

or even knew of the shaved keys in the glove box. He attacks the evidence of the socket

extension in the ignition, claiming that Banks told him the car had been abandoned and

16

there was no key.  Jones also argues that no evidence showed he improperly filled out the

trip permits, and so the State's reliance on the two improperly filled out permits to help

the jury infer knowledge that the car was stolen is insufficient.

When arguing insufficient evidence to establish his knowledge of the El Camino

being stolen, Alex Jones emphasizes the testimony of James Banks.  Nevertheless, the

jury remained free to discount or totally ignore Banks's testimony if it deemed Banks

lacked credibility.  Also when arguing the insufficiency of evidence, Jones draws

inferences from the evidence in a light favorable to him, not to the State.

Mere possession of stolen property is insufficient to support a conviction for

possession of a stolen vehicle under RCW 9A.56.068.  *State v. Couet*, 71 Wn.2d 773,

775, 430 P.2d 974 (1967).  But possession of recently stolen property combined with

slight corroborative evidence of other inculpatory circumstances tending to support guilt

will sustain a conviction for possession of stolen property.  *State v. Portee*, 25 Wn.2d 246,

253-54, 170 P.2d 326 (1946).  Such corroborative evidence may include a false or

improbable explanation of possession, flight, or the presence of the accused near the

scene of the crime.  *State v. Q.D.*, 102 Wn.2d 19, 28, 685 P.2d 557 (1984); *State v.

Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999).  In *State v. Hudson*, 56 Wn. App.

490, 495 n.1, 784 P.2d 533 (1990), this court found flight from the police to be a

sufficient corroborating circumstance.

Taken in a light most helpful to the State, sufficient evidence supports a finding of Alex Jones' knowledge of the El Camino being stolen. When Deputy Garrett Spencer, while in uniform and in a fully marked police car, passed the El Camino in a barren industrial area, Jones sped away and made multiple turns down side streets. When Deputy Spencer activated his patrol car's emergency lights and sirens, Jones was slow to pull to the side of the road and did not stop until Deputy Spencer activated his siren a second time. The jury could conclude that Jones executed the elusive maneuvers because he knew the El Camino was stolen.

The State presented evidence that Alex Jones lacked ownership papers for the El Camino. The car had two trip permits bearing the same serial number, in the name of "Jhon Doe," one in Jones' backpack and one taped to the rear window. Someone removed and secreted the license plate in the passenger compartment. A thief knows that law enforcement read license plate numbers to determine if a car is stolen. The vehicle's motor ignited with a socket extension, rather than an ignition switch and key. The original ignition switch, screwdrivers, and shaved keys lay inside the vehicle. And when Deputy Garrett Spencer asked Jones how he acquired the El Camino, Jones said "from a friend" and "around the corner." 1 RP at 181-83.

Prosecutorial Misconduct

Alex Jones next argues that the prosecutor committed misconduct by misstating

the State's burden to prove actual knowledge. According to Jones, when the prosecuting

attorney told the jury it could convict Jones based on what Jones "should have known" or

what a reasonable person "would have known," the State's attorney misled the jury into

believing it could convict Jones based on constructive, not actual, knowledge. 2 RP at 44.

The State argues that, when viewing the entire closing argument as a whole, the

prosecutor's comments were consistent with the court's instructions and the law.

The State also argues that, assuming the prosecuting attorney promoted an erroneous view

of the law, Jones shows no prejudice and that sufficient evidence otherwise supports his

conviction. We agree with Jones and reject the State's arguments.

To establish prosecutorial misconduct, the defendant bears the burden of showing

the prosecuting attorney's comments were improper and prejudicial. *State v. Warren*, 165

Wn.2d 17, 26, 195 P.3d 940 (2008). Alex Jones never objected to the State's summation

remarks. When a defendant fails to object at trial to the State attorney's remarks, the

defendant waives the assignment of error unless the attorney's conduct was so flagrant

and ill intentioned that an instruction could not have cured the resulting prejudice. *State*

*v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). Under this heightened standard,

19

the defendant must show (1) a curative instruction would not have obviated any prejudicial effect on the jury, and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012).

To resolve a claim of prosecutorial misconduct, this court must first inquire whether the prosecutor made improper comments. A prosecuting attorney commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). The prosecuting attorney misstating the law of the case to the jury constitutes a serious irregularity bearing a grave potential to mislead the jury. *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

To better comprehend Alex Jones' prosecuting attorney's inappropriate remarks during summation, we return to the law of possession of a stolen vehicle. A person commits the crime if he or she "knowingly" possesses a motor vehicle while "knowing" the car is stolen. RCW 9A.56.068; RCW 9A.56.140(1). In turn, we find the definition of "knows," "knowing," and "knowingly" in RCW 9A.08.010(1), which declares:

> (b) KNOWLEDGE. A person *knows* or acts *knowingly* or *with knowledge* when:
> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

20

(Emphasis added.) The Washington Legislature adopted the definition of "knowing" in the Criminal Code of 1975. This definition of knowledge applies to all crimes with a mens rea of knowledge, including the crime of possession of a stolen vehicle under RCW 9A.56.068. Subsection (ii)'s statutory definition of "knowledge" unmistakably suggests the trier of fact may convict one of a crime requiring knowledge, based on constructive knowledge alone.

Despite the objective definition of "knowing" under RCW 9A.08.010(1)(ii), Washington case law demands a subjective standard of knowledge when the State must prove the mens rea of "knowledge" in order to convict the accused of a crime. *State v. Allen*, 182 Wn.2d at 374 (2015); *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980). The Washington Supreme Court has even declared unconstitutional a conviction of the accused of a crime demanding "knowing" misconduct on a theory of constructive knowledge. *State v. Allen*, 182 Wn.2d at 374; *State v. Shipp*, 93 Wn.2d at 515-16.

Despite the constitutional injunction, Washington courts allow the jury to be instructed, as was Alex Jones' jury instructed, of a permissible presumption of actual knowledge by a finding of constructive knowledge. *State v. Leech*, 114 Wn.2d 700, 710 790 P.2d 160 (1990), *abrogated on other grounds by In re Personal Restraint of Andress*,

21

147 Wn.2d 602, 56 P.3d 981 (2002); *State v. Shipp*, 93 Wn.2d at 515-16; *State v. Bryant*, 89 Wn. App. 857, 872, 950 P.2d 1004 (1998); *State v. Barrington*, 52 Wn. App. 478, 485, 761 P.2d 632 (1988); *State v. Rivas*, 49 Wn. App. 677, 689, 746 P.2d 312 (1987); *State v. Kees*, 48 Wn. App. 76, 82, 737 P.2d 1038 (1987); *State v. Gogolin*, 45 Wn. App. 640, 647, 727 P.2d 683 (1986); *State v. Davis*, 39 Wn. App. 916, 919-20, 696 P.2d 627 (1985). Still, despite this presumption, the jury must find subjective knowledge. *State v. Shipp*, 93 Wn.2d at 517. So confusingly a jury cannot convict the accused based on constructive knowledge, but may determine constructive knowledge to be evidence of subjective knowledge.

During closing argument, Alex Jones' prosecutor mentioned at least five times that Alex Jones "should have known" the car was stolen. Although the prosecutor also argued, during summation, that the State had proven Alex Jones actually knew the car was stolen, the attorney repeatedly encouraged the jury to convict Jones based on what he should have known without ever mentioning that the jury can convict only if Jones actually knew the car to be stolen. The State's attorney intoned: "the issue in this case is whether Mr. Jones knew the car was stolen, *or significantly, if Mr. Jones ought to have known* that the car was stolen based on the information that was available to him." 2 RP at 75 (emphasis added). The State's attorney thereby repeatedly misstated the law.

22

*State v. Allen*, 182 Wn.2d 364 (2015) informs our decision. In *State v. Allen*, a prosecution for being an accomplice to aggravated first degree murder, the State needed to prove beyond a reasonable doubt that Darcus Allen knew the murder victims to be police officers. The prosecuting attorney, during summation, repeatedly used the phrase "should have known" when describing the definition of "knowledge." The Washington Supreme Court concluded that the "should have known" standard is incorrect because the jury must find that the defendant actually knew. *State v. Allen*, 182 Wn.2d at 375. Alex Jones' prosecutor uttered the identical statements to those condemned by the high court in *State v. Allen*.

Because Alex Jones' counsel failed to object to the prosecutor's comments permitting a conviction based on constructive knowledge, this appeal tasks the court with determining whether the prosecuting attorney's misconduct was flagrant and ill-intentioned and whether Jones suffered prejudice. We question our ability to enter the thoughts of the prosecuting attorney in order to discern his intentions. Despite the "ill-intentioned" standard, our Supreme Court has directed us not to delve into the mind of the prosecutor. The Supreme Court has written twice that we should not focus on the prosecutor's subjective intent in committing misconduct, but instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing

prosecutorial standards and whether that prejudice could have been cured with a timely objection. *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015); *State v. Emery*, 174 Wn.2d 741, 762 (2012).

At least two Washington courts have noted one factor to consider when determining if improper prosecutorial arguments were flagrant and ill-intentioned. An argument should be so characterized when a Washington court previously recognized the same argument as improper in a published opinion. *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010); *State v. Fleming*, 83 Wn. App. 209, 213-14, 921 P.2d 1076 (1996). In *State v. Fleming*, the prosecuting attorney told the jury that to acquit the defendants of rape the jury must find that the victim lied or was confused. This court held the misconduct to be flagrant because the prosecutor uttered the argument two years after an opinion proscribing the argument.

Because of the rule in *State v. Johnson* and *State v. Fleming*, we conclude that Alex Jones' prosecutor engaged in flagrant and ill-intentioned conduct. At least one Supreme Court decision issued before Alex Jones' trial, *State v. Allen*, 182 Wn.2d 364 (2015), held that a prosecuting attorney should not ask a jury to convict on a crime requiring knowledge based on what the accused should have known. Alex Jones'

prosecuting attorney should have carefully followed the strictures of *Allen* and expressly told the jury not to convict on constructive knowledge.

When reviewing prosecutorial misconduct not objected to at trial, the Supreme Court also directs us to address: (1) whether a curative instruction would have obviated any prejudicial effect on the jury, and, conversely, (2) whether there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d at 761 (2012). We do not know if this is a test apart from whether the prosecuting attorney engaged in flagrant and ill-intentioned misconduct.

Alex Jones' trial court could not have cured the prejudice resulting from the State's attorney's closing argument with another instruction. The court already instructed the jury in accordance with precedent and standard instructions that the jury must find actual knowledge, but that the jury may infer actual knowledge by constructive knowledge. The court would only repeat the previously delivered instruction. In *State v. Allen*, 182 Wn.2d 364, 381-82 (2015), the Supreme Court also held that a curative instruction would not remedy the prejudice caused by the improper comments by the prosecuting attorney about convicting on constructive knowledge.

We also conclude that the prosecutor's erroneous comments prejudiced Alex Jones. The parties strenuously disputed whether Alex Jones knew the El Camino to be

stolen. Jones presented extensive testimony of a witness who reportedly sold the car to Jones. The witness explained why a socket extension was used to start the automobile. This witness's testimony, if believed, would establish no constructive knowledge. The State produced no direct evidence and only circumstantial evidence that Jones had actual knowledge he possessed a stolen car. Although the State presented evidence of Jones eluding Deputy Garrett Spencer, the jury could find that Jones attempted to escape because of a suspended license, not because of knowledge of driving a stolen vehicle.

In closing argument, the prosecutor lowered the State's burden to prove Jones' knowledge by repeatedly asserting that the jury could find Jones guilty if the jury found he "should have known" the car was stolen. Repetitive misconduct can have a "cumulative effect." *In re Personal Restraint Petition of Glasmann*, 175 Wn.2d 696, 707, 286 P.3d 673 (2012).

The State contends that ample evidence could have led the jury to find that Alex Jones had actual knowledge of the El Camino being stolen. Nevertheless, we do not decide whether a prosecuting attorney commits prejudicial misconduct based on whether the State presented sufficient or ample evidence to convict. *State v. Allen*, 182 Wn.2d 364, 376 (2015). Instead, we inquire whether there is a substantial likelihood that the instances of misconduct affected the jury's verdict. *State v. Allen*, 182 Wn.2d at 376.

26

CONCLUSION

We reverse Alex Jones' conviction for possession of a stolen vehicle and remand for a new trial.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.

No. 36795-9-III

PENNELL, C.J. (concurring) — We join the majority opinion in full, but write separately to distinguish this case from our recent divided opinion in *State v. Lorrigan*, No. 36379-1-III (Wash. Ct. App. Apr. 7, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/363791_unp.pdf.

Like this case, *Lorrigan* was a possession of stolen motor vehicle case and involved an allegation of prosecutorial misstatement of mens rea—constructive knowledge (i.e. proof of what the defendant should have known) instead of actual knowledge (i.e. proof of what the defendant did know). Also, like this case, the defense failed to object. But what distinguishes this case from *Lorrigan* is that the prosecutor's alleged misstatements in *Lorrigan* were subtle and implicit. Here, they were obvious and explicit. This distinction merits a different result.

As noted in *Lorrigan*, the prosecutor clarified the "'only issue'" in that case was what Mr. Lorrigan actually knew. *Lorrigan*, slip op. majority at 7. Although the prosecutor went on to argue about what a reasonable person in Mr. Lorrigan's situation reasonably should have known, the prosecutor never claimed the State could satisfy its burden of proof purely through constructive knowledge. As recognized by the *Lorrigan*

dissent, the prosecutor only "suggested to the jury that it could convict on the basis of constructive knowledge." *Lorrigan*, slip op. dissent at 1. In context, one can interpret the *Lorrigan* prosecutor's summation as merely arguing the jury could infer actual knowledge from constructive knowledge. Given the ambiguity of the record, and the lack of any defense objection, a panel of our court appropriately found the standard for reversal unmet.

Here, there was no ambiguity. The prosecutor did not just suggest he did not have to prove actual knowledge; he said so explicitly, "[What] Mr. Jones actually knew" is "not what you have to find beyond a reasonable doubt." 2 Report of Proceedings at 76-77. Nor did the prosecutor simply commingle the concepts of actual knowledge and reasonable notice; he argued that either standard could satisfy the State's burden: "[I]f he either knew or should have known he was driving a stolen car, then you can find him guilty." *Id.* at 83. By blatantly inviting the jury to convict based on a lesser standard of proof, the prosecutor deprived Mr. Jones of a fair trial. Reversal is warranted.

_____, C.J.
Pennell, C.J.

I CONCUR:

_____
Siddoway, J.

2