# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54336-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CURTIS CHARLES JOHNSON, JR., | |
| Appellant. | |

MAXA, J. – Curtis Johnson appeals his conviction of unlawful possession of a stolen vehicle. The conviction arose from an incident in which a police officer determined that the car Johnson was driving had been stolen.

We hold that (1) the evidence was sufficient to prove beyond a reasonable doubt that Johnson knew that the car he was driving was stolen, and (2) the State did not impermissibly comment on Johnson's right to silence. Accordingly, we affirm Johnson's conviction.

FACTS

*Background*

On July 14, 2019, Lakewood police officer Nile Teclemariam was on patrol when he saw a Honda Accord taking up two parking spaces. Johnson was inside the car with the motor running. Teclemariam did a license plate check and discovered that the car had been reported stolen the day before. He also learned that the registered owner was Kiyani Parks.

Teclemariam identified himself to Johnson and informed him that the car he was in was reported as stolen. Teclemariam asked Johnson for his license, registration and proof of

insurance. Johnson produced a title showing that the car was registered in Parks's name. Johnson said that he had obtained the car two days before. Teclemariam asked Johnson to turn off the car engine, but Johnson could not because the key was jammed in the ignition.

Teclemariam then asked Johnson to get out of the car, and Teclemariam handcuffed him and read him his *Miranda*[1] rights. Johnson agreed to answer some questions. Teclemariam asked Johnson where he got the vehicle, and Johnson gave three different accounts.

First, Johnson said that he bought the car from a person named Steve on Sixth Avenue in Tacoma for $700. But he could not be specific about where on Sixth Avenue the transaction occurred. Johnson then told Teclemariam that Steve was the registered owner's husband. Teclemariam saw on the registration that Parks was 19 years old and commented that most 19-year olds are not married. In response, Johnson dropped his head and sighed.

Next, Johnson stated that he got the car from a person named Rick Jackson, who facilitated the sale from Steve. Johnson gave Teclemariam a phone number for that person, but when Teclemariam called the number the call went straight to voicemail. Teclemariam informed Johnson, and Johnson said nothing in response.

Finally, Johnson changed his story again. He stated that he got the car from a person named Vic, but he provided no information about Vic.

Johnson gave Teclemariam permission to search the car, and Teclemariam removed the key from the ignition with difficulty. Johnson said that the key had been jammed in the ignition since he got the car. The key was not the key for a Honda Accord. It was bent and worn down, indicating a shaved down key used to break and override the ignition. The key could not lock or unlock any of the car doors.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Teclemariam then asked Johnson if a reasonable person would have known that the car was stolen. Johnson shook his head and said "yes." 2 Report of Proceedings (RP) at 227.

The State charged Johnson with unlawful possession of a stolen vehicle.

*Trial*

At trial, Teclemariam testified to the facts outlined above. Parks testified that her car had been stolen from the parking lot of her apartment between 11:00 PM on July 12 and 8:00 or 9:00 AM on July 13. She stated that she had possession of the car's only key. Parks testified that her husband's name was Coltran Barrin and that she did not know anyone named Steve.

During closing argument, the prosecutor reviewed the evidence that had been presented during the trial. Specifically, the prosecutor emphasized the fact that Johnson changed his story three times, that there was a shaved key stuck in the ignition, and that Johnson said a reasonable person would know the car was stolen. After discussing Johnson's three stories about how he came in possession of the car, the prosecutor concluded with "that was all he gave Officer Teclemariam." 3 RP at 254.

The jury found Johnson guilty as charged. Johnson appeals his conviction.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE – KNOWLEDGE

Johnson argues that the evidence was insufficient to prove that he knew that the vehicle he possessed was stolen. We disagree.

1.    Legal Principles

The State must provide sufficient evidence to prove each element of a crime beyond a reasonable doubt in a criminal case. *State v. Jones*, 13 Wn. App. 2d 386, 398, 463 P.3d 738 (2020). The test for determining sufficiency of evidence is whether any rational trier of fact

3

could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 140 S. Ct. 834 (2020). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* Circumstantial and direct evidence are equally reliable. *Id.*

"A person is guilty of possession of a stolen vehicle if he or she possess[es] a stolen motor vehicle." RCW 9A.56.068(1). "Possessing stolen property" includes knowingly possessing stolen property "knowing that it has been stolen." RCW 9A.56.140(1). A person acts with knowledge when he or she "has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(b)(ii).

To prove a person is guilty of possessing a stolen motor vehicle, the State must prove that the defendant possessed the stolen vehicle and knew that it was stolen. *Jones*, 13 Wn. App. 2d at 399. Mere possession of a stolen vehicle is insufficient to establish that the defendant had knowledge that the vehicle was stolen. *Id.* at 401. "But possession of recently stolen property combined with slight corroborative evidence of other inculpatory circumstances tending to support guilt will sustain a conviction for possession of stolen property." *Id.*

Such corroborating evidence includes a false or improbable explanation of the defendant's possession. *Id.*; *see also State v. Ladely*, 82 Wn.2d 172, 175-76, 509 P.2d 658 (1973) (stating that "giving of a false explanation or one that is improbable or is difficult to verify" is sufficient to show guilty knowledge); *State v. Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999) ("Absence of a plausible explanation is a corroborating circumstance.").

In *Jones*, several facts provided corroborating evidence that the defendant knew that the car he possessed was stolen. 13 Wn. App. 2d at 401-02. When a police officer passed the car, the defendant sped away and did not stop until the officer activated his siren a second time. *Id.* at 402. The defendant also lacked ownership papers to the car, the license plates were removed, there was a shaved key inside the car, and he provided the officer with a vague explanation of how he gained possession of the car. *Id.* The court concluded that viewing the evidence in a light most favorable to the State, there was sufficient evidence to support a finding that the defendant knew the car was stolen. *Id.* at 401-02.

In *Ladely*, the defendant told three different stories regarding how he acquired a stolen revolver: he had owned it for some time, he bought it from another person within the past two weeks, and he traded a third person an air compressor for it. 82 Wn.2d at 175. The court concluded that giving multiple explanations for possession was sufficient corroborative evidence to sustain the defendant's conviction. *Id.* at 175-76.

2. Analysis

Here, there was sufficient corroborating evidence to show that Johnson knew that the car he possessed was stolen. First, Johnson provided three different explanations of how he came into possession of the car: he bought it from a person named Steve, who he claimed was the owner's husband; he bought it from a person named Rick Jackson; and he bought it from a man named Vic. Johnson's claim that Steve was the owner's husband was false, and all three stories were vague and could not be verified.

Second, Johnson did not have proof that he owned the car. He only produced a title that was in Parks's name.

Third, Johnson did not have a key to the vehicle. The car engine was running because a shaved key was jammed into the ignition. Johnson could not even turn off the car.

Viewing the evidence in a light most favorable to the State, we hold that there is sufficient evidence to show that Johnson knew that the car he possessed was stolen.

B.    COMMENT VIOLATING RIGHT TO SILENCE

Johnson argues the State improperly commented on his silence in response to certain questions by officer Teclemariam. We disagree.

1.    Legal Principles

The Fifth Amendment to the United States Constitution states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution states "[n]o person shall be compelled in any criminal case to give evidence against himself." "Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence." *State v. Pinson*, 183 Wn. App. 411, 417, 333 P.3d 528 (2014). This right precludes the State from using the defendant's silence to its advantage either as substantive evidence of guilt or to invite an inference that the defendant's silence is an admission of guilt. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

A defendant has the right to remain silent both before and after *Miranda* warnings are given. *Id.* However, "[w]hen a defendant does not remain silent and instead talks to police, the state may comment on what he does *not* say." *State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001).

Whether a person has invoked the right to silence depends on "whether 'a reasonable police officer in the circumstances would understand the statement' to be an invocation of *Miranda* rights." *State v. I.B.*, 187 Wn. App. 315, 321, 348 P.3d 1250 (2015) (internal quotation

marks omitted) (quoting *State v. Piatnitsky*, 180 Wn.2d 407, 413, 325 P.3d 167 (2014)). This analysis is context specific and takes into account the circumstances leading up to the alleged invocation. *Id.* "Silence in the face of repeated questioning over a period of time may constitute an invocation of the right to remain silent" when the invocation is clear and unequivocal. *State v. Hodges*, 118 Wn. App. 668, 673, 77 P.3d 375 (2003).

In *State v. Easter*, the court held that testimony that the defendant did not answer and looked away without speaking when an officer first questioned him violated his right to silence. 130 Wn.2d 228, 241, 922 P.2d 1285 (1996).

In contrast, the court in *State v. Hager* held that there was no infringement on the defendant's right to silence when a detective used the word "evasive" regarding the defendant's answers to questions because he was describing those answers, not describing the defendant's silence. 171 Wn.2d 151, 158, 248 P.3d 512 (2011). The court stated that the facts were more analogous to *Clark* than to *Easter* and reaffirmed its holding in *Clark* that the State is allowed to comment on silence when a defendant does not remain silent and instead talks to police. *Id.* at 157-58.

Similarly, in *Hodges*, the defendant's failure to answer one of the officer's questions was not a clear and unequivocal invocation of his right to remain silent because he continued to answer other questions without hesitation. 118 Wn. App. at 673. The court held that simply not answering an officer's question in this context does not invoke the right to silence. *Id.*

2.  Analysis

Johnson argues that the State emphasized his silence in three ways. First, Teclemariam testified that Johnson dropped his head and sighed when told that the car's owner was 19 years old and probably was not married. Second, Teclemariam testified that Johnson had no response

when told that the number he had given to the officer went straight to voicemail. Third, in closing argument the prosecutor commented on Johnson's failure to provide a reasonable explanation for his possession.

Regarding Teclemariam's testimony, the trial court found after a CrR 3.5 hearing that Johnson did not appear confused about his *Miranda* rights, did not ask for an attorney at any point, and did not invoke his rights at any time during his conversation with Teclemariam. The court also found that the pre-*Miranda* conversation between Teclemariam and Johnson was non-custodial. And post-*Miranda*, Johnson gave several statements regarding how he came into possession of the car. The court ultimately ruled that Johnson made a knowing, intelligent, and voluntary waiver of his rights, and that all statements made to Teclemariam both before and after the *Miranda* warnings were admissible. As a result, Teclemariam's testimony was not an improper comment on silence under *Clark*. 143 Wn.2d at 765.

And similar to *Hager* and *Hodges*, Teclemariam's testimony described Johnson's responses to questions and did not focus on his silence. Johnson voluntarily answered Teclemariam's questions. Although Teclemariam did state that Johnson dropped his head and sighed when Teclemariam suggested that a 19-year-old would not be married, Johnson continued to answer questions after this without hesitation. A reasonable officer under similar circumstances would not have understood Johnson's head drop as an unequivocal invocation of his right to silence. The same applies to Johnson's lack of a response to Teclemariam's comment about the phone going to voicemail.

Johnson also argues that the prosecutor improperly inferred guilt from his silence during closing arguments, apparently referring to the prosecutor's statement that "[a]nd that was all he gave Officer Teclemariam." 3 RP at 254. However, this statement was made after the

8

prosecutor recited the three explanations Johnson gave for his possession of the car. As noted above, the State was free to comment on what Johnson did not say because he did not remain silent and gave the explanations to the officer. *See Clark*, 143 Wn.2d at 765.

We conclude that the State did not violate Johnson's right to remain silent.

CONCLUSION

We affirm Johnson's conviction of unlawful possession of a stolen vehicle.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

CRUSER, J.