IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  39367-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOEY DONAVON RUSSELL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Joey Russell appeals his conviction for felony assault

in the fourth degree.  He contends: (1) the prosecutor committed misconduct by

commenting on the facts underlying two stipulated prior domestic violence convictions,

and (2) remand is required for the sentencing court to strike the victim penalty assessment

(VPA).  We disagree with his first argument, agree with his second, and therefore affirm

his conviction but remand for the sentencing court to strike the VPA.

FACTS

In May 2021, Joey Russell moved from Ohio to Goldendale, Washington, to live

with his girlfriend, Jennifer Russell-McEwen.  The couple married later that month.

In February 2022, after arguing throughout the day over Ms. Russell-McEwen's

suspicion that Mr. Russell was cheating with her sister, Ms. Russell-McEwen attempted

to leave her apartment. As she attempted to leave, Mr. Russell headbutted her, punched

her in the face multiple times, and threw her to the ground by her hair.

The State charged Mr. Russell with felony fourth degree assault with a domestic

violence enhancement under RCW 9A.36.041(3).[1] Before trial, the parties verbally

stipulated to the existence of two or more prior adult convictions for violation of a

protection order—domestic violence.

During its opening statement, the prosecutor explained the State's burden to prove

the elements of the crime beyond a reasonable doubt and identified the undisputed and

disputed elements:

> This is a domestic violence case. It's assault on the defendant's partner by
> the defendant. I have to prove to you beyond a reasonable doubt, what's
> called the elements of the crime. . . . The question, you're gonna have to
> decide is whether or not it was an assault. Everything else is pretty much
> accepted.
>      That on February 21st, 2022, this happened. There's not gonna be
> any dispute. And within 10 years prior to the assault, the defendant was
> found guilty of two or more times of a repetitive domestic violence offense.
> Again, no dispute, that at least two of the proven prior offenses were

---

[1] RCW 9A.36.041(3)(b) elevates fourth degree assault from a gross misdemeanor to a class C felony if the victim is an intimate partner and the defendant has two or more prior adult convictions within 10 years for certain domestic violence offenses occurring after July 23, 2017, for which domestic violence against a family or household member was proved.

committed between family or household member again. *No dispute.* And then, it happened in the State of Washington, Klickitat County, Goldendale. No dispute.

What's the evidence gonna show? The evidence is gonna show that on February 21st, 2022, there was an argument. Either it was about whether or not the defendant should go out and—and purchase, go shopping of some sort, or that the defendant was [sic] felt disrespected. *But what we do know is that the defendant had a criminal history that—of repetitive domestic violence. Domestic violence—violence—violation of a protection order*, and he got angry. So, he headbutted his partner. He then, struck her in a harmful or offensive manner, and assaulted her. She then, called the police. He then, ran away. . . .

. . . .

The defendant had two prior repetitive domestic violence offenses within the last 10 years. *One of them involved a family household member and knowing that or disregarding that or forgetting that, whatever,* he assaulted his significant other, the person he shared a house with. And we're gonna be asking you to look at those facts. Apply that to the law that the Court is giving you and come back with the verdict of guilty as charged. Thanks for your attention.

Rep. of Proc. (RP) at 139-41 (emphasis added). Defense counsel did not object to the emphasized statements.

The State called Ms. Russell-McEwen to testify. On direct examination, she testified that the charged assault occurred after she and Mr. Russell argued about his inappropriate relationship with her sister. On the day of the assault, and after their argument, Ms. Russell-McEwen tried to leave her apartment but Mr. Russell attempted to hug her. When she rebuffed his attempt, Mr. Russell headbutted her, punched her in the

3

face multiple times, and threw her to the ground by her hair.  She then ran to a friend's house and called 911.

Mr. Russell testified in his defense.  On direct examination, he explained that on the day before the assault, Ms. Russell-McEwen kicked him out of her apartment and obtained a restraining order against him.  He added that she had obtained "[m]ultiple restraining orders" against him.  RP at 197.  He went on to explain that Ms. Russell-McEwen's sister agreed to let him stay with her after he was kicked out.  When Ms. Russell-McEwen found out about this arrangement, she showed up at her sister's house and confronted him.  Mr. Russell told Ms. Russell-McEwen to leave because she is "not the one that will go to jail. . . .  I've done—been in jail over these [no-contact orders], multiple times."  RP at 198.  Ms. Russell-McEwen responded by threatening to call law enforcement and her sister's landlord.

Eventually, law enforcement arrived and told Ms. Russell-McEwen to leave.  The officers declined to arrest Mr. Russell because he showed them he had just been served a restraining order, and Ms. Russell-McEwen came to where he was staying.  But later that evening, Ms. Russell-McEwen allowed Mr. Russell to return to her apartment.

The next morning, both Ms. Russell-McEwen and her sister were in the apartment together with Mr. Russell.  Ms. Russell-McEwen got angry with her sister for touching Mr. Russell's leg, and she told her sister to leave.  Ms. Russell-McEwen then threatened

4

Mr. Russell with divorce, smacked him, and said something about his children. Mr.

Russell testified that this provoked him.

During cross-examination, the prosecutor asked Mr. Russell about the no-contact

order:

> Q      Okay. And—and the whole time you were doing this, you were in violation of a no contact order?
> A      One day. We stayed together one day, until they dropped it and she met me at the porch.
> Q      Right. And—and there's—there's nothing in the no contact order that says you're not to have contact with her, except you can have contact on one day?
> A      No. No.
> Q      Course not. You're not supposed to have contact?
> A      No. No, you're not supposed to have it all.
> Q      Right. *And—and you've in fact, been convicted of a violation of—*
> A      Yes. I have.
> *Q      —no contact, twice?*
> A      Yes. Because that's my wife.
> *Q      Both violations of no contact orders, which have. Correct?*
> A      Yes. That's my wife.
> *Q      All right. So, the Court tells you not to have contact with her, but you do anyway?*
> A      Yes, sir?

RP at 207-08 (emphasis added). Defense counsel did not object to the emphasized

questions.

The prosecutor next asked Mr. Russell about his children, and he responded by

explaining that he no longer had custody because he and his ex-wife were convicted of

child endangerment. He added that "[t]hey gave my wife three years' probation and I got

5

11 and a half years for that. Well, since you've already brought up the domestic

violence, I smashed her face in." RP at 209.

The prosecutor questioned Mr. Russell about the assault and his prior convictions:

Q     Okay. And so, then Jennifer gets—thinks you're cheating with her
sister, she was angry, she slaps you, then?
A     After [her sister] touches my leg.
 . . . .
Q     And then, she started talking about your kids?
A     And—yes.
Q     And you say, you got provoked?
A     Yes.
Q     And you hit [and] headbutted her?
A     Yes. I did.
Q     And then, you grabbed [her] by the hair and threw her to the ground?
A     No. I punched her five more times. She fell.
Q     So, she fell—
A     When I headbutted her, she went up against the window like this,
and when she went to fall I just—I hit her five times.
 . . . .
Q     So, you admit that you weren't acting in self-defense and you
assaulted your wife. Correct?
A     Yeah.
 . . . .
Q     . . . And this happened on February 21st?
A     Yes.
*Q     And within the last 10 years prior to this assault, that you've been
found guilty, or pled guilty to two or more crimes that were repetitive
domestic violence?*
A     Yeah.
*Q     Two counts of violation—*
A     I got one—two against here now and one on my ex-wife.
*Q     Okay. Well, so you got the—you were convicted—excuse me.
Domestic violence violation of a no contact order twice—*
A     Actually,—

> *Q     —in Klickitat County, correct?*
> A     —there's more than that?
> *Q     Okay.  And that happened—I'm sorry.  And those convictions
> happened in what, 2020?*
> A     One did.  And, the other one was—it was longer than that.
>  . . . .
> *Q     All right.  So, both of them happened within the last two years?*
> A     Yeah.
> *Q     And at the time they happened, she was a household member, family,
> and also been—and you were married?*
> A     She's my wife, yes.
> Q     All right.  And—and this all happened in the State of Washington?
> A     Yes, sir.

RP at 212-13, 216-17 (emphasis added).  Defense counsel again did not object to the

prosecutor's questions about the prior convictions.

After the parties rested, the trial court instructed the jury on the law and also

informed the jury of the parties' stipulation:

> The parties have agreed that certain facts are true.  You must accept
> as true the following facts:
>      1.  within ten years prior to the currently charged assault, the
> defendant was found guilty two or more times of the repetitive domestic
> violence offense of Domestic Violence—Violation of a Protection Order;
>      2.  That these two prior offenses occurred after July 23, 2017;
>      3.  That at least two of the proven prior offenses were committed
> between family or household members.

Clerk's Papers at 51.

During closing argument, the prosecutor outlined the jury instructions and

reminded the jurors about his burden to prove the elements of the crime beyond a

reasonable doubt. As he discussed the elements of the crime, he first called the jury's

attention to the to-convict jury instruction, then told the jury to look at the stipulation

instruction, noting "[t]hat is the agreement between the parties that you must accept these

facts as true." RP at 243.

The prosecutor then discussed each element individually, including the stipulated

prior convictions:

> So, let's look at what the—what the State has to prove. That this
> happened on February 21st, 2022. Is there any question? No. . . . [L]aw
> enforcement testified to it. Jennifer testified to it, the defendant testified to
> it. It happened on the 21st.
> That within 10 years prior to the assault, the defendant was found
> guilty of two or more times of any repetitive domestic violence offense.
> Well, not only did he testify that he did that, but he stipulated to it. And in
> Instruction No. 10, it tells you. That in 10 years prior to the currently
> charged assault, the defendant was found guilty of two or more times of
> repetitive domestic violence offense domestic violence violation of a
> protection order *involving Jennifer.*[2] So, we know that happened.
> That at least two of the proven prior offenses occurred after
> September 23rd, 2017. Well, we know that because they—his proven
> offenses happened that he stipulated to, *happened after he moved here in*
> [sic] *May 14 of 2021 to marry Jennifer on May 29th.*[3] So, that all
> happened after 2017. So, again there's—there's no issue.
> That at least two of the proven prior offenses were committed
> between family or household members. Again, he stipulated to that. That
> at least two of the proven prior offenses were committed between family
> and household members. *And he testified that it happened with Jennifer a*

---

[2] The stipulation did not name Jennifer Russell-McEwen, the victim in the charged case.

[3] Again, the prosecutor tied the stipulated prior convictions to Ms. Russell-McEwen, even though the stipulation did not tie her to those convictions.

*household member, it's his wife.* So,—and then, I also have to prove that the act occurred in the State of Washington. And again, there's—there's no —it happened in Washington, it happened in Goldendale, it happened on Shuster Road.

So, then the question becomes, was there an assault? . . .

. . . .

So, the defendant testifies. And he was brutally honest. He admitted that he assaulted her. He admitted that he headbutted her. He admitted that he punched her. He admitted all the elements of this crime . . . .

. . . .

Ladies and gentlemen, the defendant is guilty as charged. It's pretty straightforward. It's pretty clear. And I'm asking you to return that verdict. Thank you.

RP at 243-47 (emphasis added). Again, defense counsel did not object to the prosecutor's comments about the prior convictions.

The jury convicted Mr. Russell of felony assault in the fourth degree, and he timely appealed.

## ANALYSIS

PROSECUTORIAL MISCONDUCT

Mr. Russell contends the prosecutor committed reversible misconduct by making the emphasized statements above about the underlying facts of the stipulated prior convictions. We disagree.

*Prosecutorial misconduct standards*

To resolve a claim of prosecutorial misconduct, this court must first inquire whether the prosecutor made improper comments. *State v. Jones*, 13 Wn. App. 2d 386,

9

403, 463 P.3d 738 (2020). The defendant bears the burden of showing that the prosecutor's comments were improper and prejudicial. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008).

However, where, as here, the defendant fails to object or request a curative instruction at trial, the issue of misconduct is waived unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). Under this heightened standard, the defendant must show that (1) "'no curative instruction would have obviated any prejudicial effect on the jury'" and (2) the misconduct resulted in prejudice that "'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). We review allegedly improper comments in the context of the entire argument, the issues in the case, and the jury instructions. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

*The issues in the case and the stipulation*

RCW 9A.36.041(1)-(2) provides that a person is guilty of assault in the fourth degree, a gross misdemeanor, "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."

10

RCW 9A.36.041(3)(b)(i) elevates fourth degree assault to a class C felony if the victim is an intimate partner, and the defendant has two or more prior adult convictions within 10 years for a repetitive domestic violence offense as defined in RCW 9.94A.030[4] occurring after July 23, 2017, for which domestic violence against a family or household member was pleaded and proved.

Here, the State charged Mr. Russell with felony fourth degree assault based on two or more prior convictions of repetitive domestic violence. The parties stipulated to the existence of two of Mr. Russell's prior repetitive domestic violence offense convictions, occurring after July 23, 2017, against family or household members.

A "stipulation" is an express waiver that concedes, for purposes of trial, the truth of some alleged fact, with the effect that the State need offer no evidence to prove it and the defendant is not allowed to disprove it. *See State v. Case*, 187 Wn.2d 85, 90, 384 P.3d 1140 (2016). "While the State must prove every element of the crime beyond a reasonable doubt, for strategic reasons, defendants charged with felony violation of a domestic violence no-contact order regularly stipulate to prior convictions that are elements of the charged crime in order to constrain the prejudicial effect on a jury." *Id*. at 91.

---

[4] Former RCW 9.94A.030(42)(iii) (2022) defines "repetitive domestic violence offense," in part, as "[d]omestic violence violation of a protection order."

*First prong: Improper comments*

The State argues that the italicized comments in opening and closing were proper. We disagree.

Prior convictions that are elements of the charged crime involve an accused person's legal status, where the prior convictions are wholly independent of the criminal acts charged and "the fact of the qualifying conviction is alone what matters under the statute." *Old Chief v. United States*, 519 U.S. 172, 190, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Here, the fact of two or more prior convictions for domestic violence is what matters under RCW 9A.36.041(3)(b). This fact was stipulated to prior to opening statements.

A stipulation waives the right to a jury trial on that stipulation. *Case*, 187 Wn.2d at 90-91. When a defendant stipulates to their legal status, i.e., prior convictions, it is improper for a prosecutor to admit the name of or the facts of the underlying conviction, because doing so carries a risk of unfair prejudice that substantially outweighs its probative value. *Old Chief*, 519 U.S. at 180-81.

Here, both in his opening statement and closing argument, the prosecutor named the prior offenses and/or discussed facts of those offenses. This was improper. This impropriety was not sanitized by the fact that Mr. Russell, during cross-examination, testified to his prior offenses and some of their underlying facts.

12

*Second prong: Prejudice*

Alternatively, the State argues that Mr. Russell cannot show he was prejudiced by its improper comments. We agree.

During cross-examination, Mr. Russell admitted to the charged crime and also admitted that it was improper for him to headbutt and hit his wife multiple times, and he was not acting in self-defense. Quite literally, Mr. Russell conceded to a portion of the charged crime by his stipulation and confessed to the remainder of the crime during his cross-examination. We conclude that the State's improper comments did not prejudice Mr. Russell.

VPA

Mr. Russell contends the VPA must be struck from the judgment and sentence due to changes in the law. The State concedes. We accept the State's concession.

Under former RCW 7.68.035(1)(a) (2018), the sentencing court was required to impose a VPA on any individual found guilty of a crime. Effective July 1, 2023, the legislature amended RCW 7.68.035 to preclude superior courts from imposing a VPA on a defendant who, at the time of sentencing, was found to be indigent as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, § 1(4). Statutory amendments related to legal financial obligations imposed upon conviction generally apply to all cases pending on direct appeal that are not yet final. *See*, *e.g.*, *State v. Wemhoff*, 24 Wn. App.

No. 39367-4-III
*State v. Russell*

2d 198, 201-02, 519 P.3d 297 (2022); *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018).

Mr. Russell's case is pending on direct appeal and is not yet final, and the record shows that the sentencing court found him to be indigent. Therefore, the amended statute applies, and we direct the sentencing court to strike the VPA from his judgment and sentence.

Affirmed, but remanded to strike the VPA.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Pennell, J.

14